Yes. So I gather we're ready to start in U.S. v. Smith, 18-8004. Morning, Your Honors. May it please the Court, Jacob Rauschebow for the appellant, Justin Smith. The government proved that Mr. Smith possessed an object that created the impression that the object was a firearm. That is the definition of a dangerous weapon, and so the three-level dangerous weapon enhancement clearly applied. The government introduced no evidence on the single distinguishing fact that would elevate this from a three-level dangerous weapon enhancement to a five-level firearms enhancement, namely that the object was in fact capable of expelling a projectile by the action of an explosive. Without any such evidence, the district court erred in applying the five-level firearm enhancement. In finding that the firearms enhancement applied, the court relied on three pieces of evidence only, none of which established that the object possessed was in fact a real firearm as distinguished from a mere dangerous weapon. First, the court relied on the eyewitness testimony from the clerk. She did not testify. She only gave a statement to an ATF agent, and the ATF agent testified. Her statement said that she saw a tiny black gun and she saw, she remembers looking down the barrel. But the mere fact that she saw a barrel doesn't establish that the object possessed was capable of expelling projectile by the action of explosive. BB guns, pellet guns also have barrels, and so the fact that she saw a barrel doesn't suggest that it was a real firearm. Moreover, again, she didn't testify, was subject to cross-examination. She was never asked if she had any reason to believe that the firearm was real. She never stated that she had any experience with firearms that would somehow allow her to make the determination in the instant that she saw it that it was a real firearm as opposed to a BB gun. Thus, the only reasonable inference one can draw from her statement is that in an instant she saw something that looked like a gun. So again, this doesn't rise to the level of proving that anything beyond a dangerous weapon merely establishes that the object possessed closely resembled a firearm and was used in a manner consistent with a firearm, which fits the definition of dangerous weapon to a T. Counsel, just to be clear on the procedural setting, this is evidence that was presented at the sentencing hearing and the standard of proof is preponderance. Is that correct? That's correct. And we're reviewing for clear error. That's correct. Second, the district court relied on Mr. Smith's gestures as viewed from the surveillance footage. The court found that because he used, he had the classic gestures of an individual using a firearm, that supported the five-level, the inference that it was, in fact, a real firearm. However, again, using an object in a manner that creates the impression that the object is a firearm is literally the definition of, or a definition of, dangerous weapon. So the fact that he used gestures consistent with the use of the firearm is perfectly consistent with a dangerous weapon enhancement and in no way suggests that the object he possessed was, in fact, capable of firing a projectile by the action of an explosive. And finally, the district court relied on his criminal history. Mr. Smith, eight years prior, had a few residential burglaries during which he stole a number of items, including electronics, a TV, and among those items were firearms. The court found that Mr. Smith's criminal history evidenced a recognition that firearms have value and use. And due to this recognition, it is more likely, because of his recognition that firearms have value and use, therefore he used, he must have used a real firearm in a robbery eight years later. But the fact that he stole firearms, among other items, during a residential robbery, well, doesn't necessarily show that he knows that firearms have value and use, or certainly value for perhaps for resale or whatnot, but it doesn't take a residential burglary to understand that firearms can be used during a robbery. And as evidenced here, the fact that he didn't discharge the firearm, or whatever the object was that he possessed. Sorry. Yeah, I obviously misspoke. The object that was clearly not a firearm. The mere fact that he had this prior criminal history, it doesn't take such a criminal history to understand that a firearm has value and use. And it doesn't show that the object used during a robbery eight years later was actually capable of expelling a projectile by the action of explosive. And that is the technical definition of a firearm, and it was the government's burden to meet that technical definition. The evidence that they did present showed only that he possessed an object that, again, closely resembled a firearm and was used in a manner consistent with a firearm. Well, didn't the ATF agent appear at the sentencing hearing and say that the agent had viewed the video and identified the object as a firearm? I don't know that the agent was opining that it was a firearm. Hold on one second. Let me just read you. Please. This is from the transcript on page 12. Quote, the surveillance footage indicated that Mr. Smith was holding an object, comma, a firearm. That's what the ATF agent said. And the fact that the agent used, I think it's telling that the agent said object first before calling it a firearm. Well, she didn't call it a dangerous weapon. No, but there's, I mean, there is, Your Honors, the surveillance video is the government submitted that as part of the record on appeal. If you watch the, there's absolutely no way it is, if the ATF agent was opining that that object possessed was capable of firing, of expelling a projectile by the action of an explosive, then there's no way that could be found credible. You tried to challenge that testimony, or I'm not sure you were there, but the defense tried to challenge her statement on expert. She couldn't testify as an expert. Was that the challenge? Are you making any argument that there, that this was improper expert testimony? No, I'm not. I mean, it is an ATF agent. They're supposed to know something about firearms. Right. I don't, I think it's an unfair interpretation of that testimony to say that the ATF officer was in fact opining as an expert that that object was capable of firing a projectile by the action of explosive. I think the ATF agent was simply saying from the surveillance video, you can see that an object is possessed and it looks like a firearm. I think that's the fairest reading. If you look at the surveillance video, there's no way you see a tiny piece of something for literally one second. So, so would you agree that the evidence was consistent with the object being either a firearm or a dangerous weapon? Yes. But what I would say is that where there, there is this tiered structure under the guidelines where if a dangerous weapon is something that closely resembles a firearm or is used in a manner consistent with a firearm, the government can't meet its burden to show that the higher enhancement applies without showing any evidence as to the one distinguishing fact that would elevate it from a dangerous weapon to a firearm. Well, I guess the reason I put it that way is just how much do they need? Are we sort of at 50-50 in terms of the record and they just need a little nudge to get over the line or is it something different? I mean, I think that there's admittedly overwhelming evidence that closely resembled the firearm and used in a manner consistent with the firearm. There can be no dispute that the government met its burden to prove that the dangerous weapon enhancement applied. The only difference between those two in terms of the government's burden of proof, they would need some evidence showing that something that goes to that expelling projectile by the action of explosive. We can look at other cases where they have found that there was enough evidence. For example, in Cedillo, the case that the government cites, this wasn't before, the issue wasn't before the court. That was about whether, that was about unreliable hearsay and whether evidence was admissible. That's not the argument that I'm making here, but it's nevertheless telling. There, at least the victim had an opportunity to view the gun for a longer period of time rather than a mere instant. He was familiar with the individual. He testified that the, and he did in fact testify, I believe, and he at least stated that the object possessed was either a .357 or a .38, but they're very similar looking and he would need to know, he would need further inspection to distinguish between those two. So at least there you have someone who's seen the gun with experience with firearms, they were also former military, had undergone firearms training. Potentially that would be enough, but here you just have a victim with, who at least on the record has no experience with firearms, gave, sought for half a second and didn't give, her description of the firearm didn't give any indication that she knows anything about firearms, just that it was a, it was a tiny black gun with a barrel. In another case, on the video, on the video, it looked like it was a silver gun. Right. And yeah, you're right, Your Honor. And we, we point that out in our brief that it, she gave an, an inaccurate description of, of the object, no less. In another case, an ATF agent was able to testify from far more clear surveillance footage than we have here, that the object possessed, looks like a TEC-9 and TEC-9 replicas or BB guns are not available for sale in the United States. So there certainly is, in most cases, you know, where the government's trying to prove the firearms enhancement, they may have recovered the firearm, the firearm might've been discharged, or they can at least have more evidence than they do here, that just something going to show that it was actually capable of firing a projectile by the action explosive, which we don't have here. If I could preserve the rest of my time for rebuttal, please. Thank you. Whenever you're ready. Good morning. May it please the court. Counsel, my name is Jada Garofalo, and I represent the United States government in the matter before the court today. The sole issue before the court today is whether the district court clearly erred when it found by preponderance of the evidence that the object in Mr. Smith's hand was a firearm, as that term is used in the sentencing guidelines, section two of the criminal justice act. 3.1 B to C the sentencing guidelines to find the term fire. I'm a little bit more black broadly than counsel for Mr. Smith has advocated. I'm going to read it to you real quick. A subsection one, any weapon, including a starter gun, which will, or is designed to, or may be readily converted to expel or project by action of explosive. So then subsection two, a frame or weapon of such receiver. So even just holding the framework of, of such a weapon would suffice here. Um, that's not to say that we have the firearm. Therefore, we're here today to decide if the government met its burden of proof, um, by preponderance of the evidence that the object was in fact more likely than not a firearm. I did skip over something I want to correct with this court. Um, I noticed a mistake in my brief on page 13. There's a sentence that says a five level enhancement for a firearm yields a 70 to 87 month sentence guideline range. This is incorrect. And it should have stated a five level enhancement for a firearm yields a 63 to 78 month sentence guideline range. And Mr. Smith was sentenced to 70 months, which is in the middle of that range. Okay. Turning back to my argument, my apologies, the standard of proof as this court as has acknowledged is preponderance of the evidence. And that means that the government had to prove with a greater weight of evidence, um, that such that the trier fact in this case, it was judge Johnson believed that the existence of the fact is more probable than its non-existence here. The government met that preponderance standard because reliable victims were considered and considered that they were, excuse me, the district court determined that the victim's statements were reliable and supported by corroborating evidence such that all of the evidence taken together, which counsel for Mr. Smith has recited was enough to satisfy the district court that the government had met its burden of proof that the object of Mr. Smith's hand was more likely than not a firearm. This court, um, owes a good amount of deference to the district court's finding because assessing credibility of witnesses is distinctly the province of the district court. And so therefore it will only overturn as you have noted judge Matheson that upon a fair, I know that the court found the, the victim, uh, credible, but when I think of, of, of whether a fact finder can rely on a witness, there's the credibility part of the assessment, but there's also the ability of the witness to perceive, um, what it is they're perceiving. And it seems to me that here the victim can be honest as the day is long, but whether she can detect and report, uh, a feature of this object that would make it a firearm is a different question. And I'm wondering why the court could rely on her at least to find that this is a firearm. Uh, the district court made several findings noting that he in particular found this victim reliable and credible. He noted that she faced the defendant as he approached her with handgun with the gun drawn, pointed at her, and she remained facing him and composed and able to address, to observe what was happening and then immediately called 911 and her manager to report. Well, I'm, I'm, I'm, can we just zero in on, was there something about the object? I mean, it, it, it sounds like her testimony would support a finding that something looked like a gun, maybe it looked like a firearm, but is looked like enough to get you there. When the district court is viewing evidence, it may consider any reliable information. And when that reliability is called into question, then it may look to corroborating evidence. So other cases have shown different corroborating evidence. There's a variety of corroborating evidence that can be considered by the district court. What do you think is the best evidence here to get, to get the government past the preponderance point? I think it's an integral that because this, we don't have the firearm, it's integral to consider all of the evidence together. If we parse it out into little pieces, of course, it's not going to look. Well, I, no, I understand, but, and, and you've got to consider all of it together, but in considering all of it together, you also have to consider the pieces and some pieces are better than other pieces. So what, what is the best piece? I would say the surveillance footage is one of the best pieces in my personal opinion, because it shows the defendant, um, walk in, he had the handgun pulled and pointed at the victim for two full seconds. Then he approached and jumped the counter towards her in an aggressive manner. And then he even knew which drawer to try and open. I watched last night again, just to review my memory. And I noticed that he was particular. He, he went to open the exact drawer that had the cash register drawer in it. Um, and judge Johnson found that as well. He found that this defendant, um, wasn't very credible because he has committed so many similar offenses. And he, he was released from prison just a year and a little over a year before this offense occurred, and he was currently on probation while he committed this offense and judge Johnson in the record, I think it's page 66 notes that the credibility, any credibility the defendant had was, was dissipated at that point for judge Johnson's purposes. Um, furthermore, the counsel for Mr. Smith tries to, um, group Mr. Smith's criminal history into just a residential burglary. It wasn't so simple. It was actually the three most recent residential burglaries were actually of firearms. There were 14 stolen firearms collectively in those burglaries. And nine of those were found in Mr. Smith's possession. So this man had a familiarity with firearms, knew how to handle them and knew their utility. And judge Johnson considered that as well. Um, is there anything in the record to indicate how often robberies are committed with objects that look like guns that aren't guns? So that's, that's actually an argument that counsel for Mr. brings up. Um, and while I, I, I mean, I'm sure they are committed sometimes with fake and with real, I think it happens both ways. Um, the, the replica theory has actually been dismissed by the Sixth Circuit. And while the, in that case, I cited my brief, it's USB fraud while Mr. Farad and Mr. Smith advanced different or are charged with different offenses. They advanced the same defense, which is the fake gun theory. Um, and that was rejected by the Sixth Circuit ultimately, because it found that witness testimony, which we have here and image-based evidence, which we have here is enough to find beyond a reasonable doubt, which is a much higher standard of proof than the government held, um, that the robber carried a real gun. Uh, in addition, Judge Johnson's been around a while. He's probably seen a lot of robbery cases. Maybe they, maybe they're not as common in Wyoming as elsewhere, but I'm just wondering why it's unreasonable for him to assume that something that looks like a gun and is used like a gun is a gun, unless there's, I mean, we're talking about probabilities here. We're not talking about beyond a reasonable doubt. And unless there's some experience he has with people who are, who are caught and it's determined that it was a fake gun, it didn't fit the definition of firearm in the statute. I think it's important to consider all of the pieces of evidence that Judge Johnson did consider to come to his findings. So the victim statements being reliable and then corroborated by the surveillance footage, the manner and use of Mr. Smith's firearm and Mr. Smith's criminal history. And also he did note on page 66, again, how the defendant, when he was in state custody, his phone lines were listened to, and he was making a joke of his crime. He did not seem to be taking any of it seriously. And he thought it was funny. He thought he was famous. And that the ATF agent mentioned that in the pre-sentencing report. So I think Judge Johnson, considering all of that. How did that reflect on his having used a firearm? These comments by the defendant, how did the judge feel that that supported the determination, this is a firearm? I think it went to his credibility rather than to the exact fact of whether or not he was holding an actual firearm. I'd like to turn to the surveillance footage one last time and talk about how the district court found that that surveillance footage did corroborate what the victim had said. And I'd like to highlight that the case law that is cited in my brief, Galeo and Cedillo, are instances of circuit courts, upholding district court firearm enhancements when they look to a variety of corroborating evidence. There's no recipe set out in any case law that says you have to have these five factors. Instead, the guidelines themselves and case law says you look to any reliable information, provided it has a sufficient indicator of reliability, and then you go to corroborating evidence. And the district court here did that. First, the victim statements were taken and they were provided by an ATF agent who also gave her opinion that it was a firearm, and then they were supported. And while touching a firearm and being familiar with guns are two factors that do and can corroborate victim statements. They are not the only such pieces of evidence. Does this court have any more questions? Well, I'm interested in this gestures evidence. I'm trying to understand how it helps either way. It seemed to me that if somebody comes in with a fake gun and wants someone else to think that it's a real gun, maybe the gestures would be consistent or more consistent with using a fake gun. So let me just put it this way. Can we take gestures off the table here? I think it's important to consider all of the pieces of evidence together. Well, maybe that's the wrong way to put it. If I consider gestures, why should I give it anything more than a zero in terms of moving the needle either way? Why wouldn't somebody do gestures with a firearm as well as with a facsimile? Here, when Judge Johnson looked at the record, he found that he saw something in the video and the video was how he reviewed the manner and circumstances of use. So he noted that he saw a firearm underneath the defendant's hand when he jumped over the front desk. And he also noted that he disagreed with that fake firearm proposition. He said, why would we assume that it's a firearm when it's used as a gesture? And that's kind of where the fraud case goes also, that same line of logic. And ultimately, that with the victim statements and the surveillance footage and Mr. Smith's criminal history and behavior, once he was under supervision, led Judge Johnson to find that the government had met its burden of proof, which was beyond a reasonable doubt, more likely than not. And this court, again, has a standard of review of clear error. So unless this court finds that this finding is not plausible in light of the entire record on appeal, it cannot overturn. Are there any more questions? Yes. On that point, the enhancement, did the enhancement require brandishing? So it's kind of a, you can think of it in four, kind of four parts. There's a firearm or a dangerous weapon. Those are two parts. And then there's otherwise use and there's brandishing. And so here it was found that the defendant brandished a firearm. However, there may have been facts to support an even higher sentence. Oh, okay. Yeah. Actually, the guideline says if a firearm was brandished or possessed, and it also says if a dangerous weapon was brandished or possessed. We got brandishing all over. Okay. Yeah. It's kind of a complex guideline. So in closing, I would just like to revisit the standard of review and this court reviews the district court's factual findings underlying a sentence enhancement with deference, it will only overturn upon a finding that the district court's findings were clearly erroneous without any factual support in the record such that this court has a firm and definite conviction that a mistake has been made because the district court, when considering all of the evidence together found that the victim's statements were reliable and supported by corroborating evidence. The district court did not clearly air when it found that Mr. Smith held a firearm. And for that reason, the government respectfully requested this court uphold his sentence. Thank you. Thank you. Your Honor, I just want to clarify, um, much of the case law that the government relies on where they say that, um, you know, this court and others have upheld firearms enhancement where there was a witness whose testimony was corroborated by other evidence that's because the defendant in those cases was challenging the admissibility of hearsay evidence. That's not the challenge that Mr. Smith is bringing today. Um, we're not challenging the admissibility of any evidence or the credibility determinations the district court made. Um, we're only challenging the weight that the court gave that evidence, uh, and the inferences that he drew. Um, as far as Judge Hart's concerned about whether there's any evidence in the record about the frequency with which fake guns or real guns are used. Um, there isn't not in, there wasn't any evidence presented in the district court, um, but neither did the district court rely on, um, or at least expressly rely on his personal experience. He didn't say anything to the effect of, you know, in all my years, I've only seen real guns ever used. Um, and, and the fact, the mere fact that the guidelines address fake firearms, um, uh, shows that fake firearms are at least concerned enough to put in the guidelines. And, uh, in our briefs, we cited several cases where fake firearms were in fact used, um, as well as some newspaper articles, um, showing that, uh, that fake firearms are common, um, particularly because, uh, they accomplish the same goals as a firearm, or at least can to, to a certain point. Um, and that, uh, felons can more easily access fake firearms as opposed to real ones, um, because he can simply, uh, buy them, uh, legally as opposed to, um, obviously if they're felons, they can't legally purchase a firearm. Uh, if there are any other questions. Thank you, counsel. Thank you. Thank you, uh, Case Smith.